UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EMPLOYERS MUTUAL CASUALTY
COMPANY                                                                                              PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:17-CV-00105-CRS-DW

SG&D VENTURES, LLC                                                                           DEFENDANT

Memorandum Opinion

I. Introduction

This matter is before the Court on the motion of Plaintiff Employers Mutual Casualty Company ("Employers Mutual") to bifurcate trial under Federal Rule of Civil Procedure 42 and to hold the discovery of bad faith issues in abeyance, ECF No. 10. Defendant SG&D Ventures, LLC (SG&D) responded, ECF No. 12. Employers Mutual replied, ECF No. 15. The Court will grant Employers Mutual's motion to bifurcate trial and to hold the discovery of bad faith issues in abeyance pending the resolution of the underlying declaratory judgment claim and contract counterclaims.

II. Background

A. Allegations in the Complaint

SG&D maintained an insurance policy issued by Employers Mutual ("the policy"). Policy 1, ECF No. 1-3. According to the complaint, SG&D submitted a notice of an insurance claim to Employers Mutual under the policy for property damage suffered by eight SG&D properties in Louisville, Kentucky. Compl. ¶ 4, ECF No. 1. The notice of claim asserted that a hail storm had damaged the properties' roofs, gutters, and HVAC systems. *Id*. ¶ 5. The date of loss was April 28, 2012, four and one-half years before the notice of claim was sent to

Employers Mutual. *Id*. ¶ 6. SG&D requested that Employers Mutual pay $290,865.23 to repair the damage to the properties. *Id*. ¶ 7.

On October 11, 2016, Employers Mutual and SG&D agreed that Employer Mutual's investigating the claim would not waive or invalidate the terms or conditions of any insurance policy or the rights of the parties. *Id*. ¶ 8. That same day, Employers Mutual's agent, Julia Tilford, reviewed the properties. *Id*. ¶ 9.

On December 21, 2016, SG&D's representative, Sean Garber, testified under oath about the insurance claim. *Id*. ¶ 10. He also produced the deed to the properties that showed that SG&D had acquired the properties between 2008 and 2010. *Id*. Garber affirmed that the properties' roofs began leaking in 2012, after the hail storm, and continued to leak through 2016. *Id*. ¶ 11. He attested that the leaks further damaged the properties' ceiling tiles, light fixtures, and sheet rock. *Id*. Garber also explained that SG&D employees and several independent contractors had tried unsuccessfully to repair the leaks in the roofs. *Id*. ¶ 12. While testifying, Garber recalled the hail storm that had occurred on April 28, 2012. *Id*. ¶ 13. His company, which occupies most of the properties, bought scrap metal that had been damaged in the hail storm and sold auto parts to companies repairing cars damaged in the hail storm. *Id*.

Soon thereafter, Employers Mutual filed suit in this Court. Employers Mutual alleges that SG&D's claim for the damage to the properties caused by the hail storm is time barred under the terms of the policy (Count I). *Id*. ¶¶ 22–24. Employers Mutual further maintains that SG&D's failure to promptly provide notice of the insurance claim and to take reasonable steps to protect the properties from further damage bars any current claim by SG&D for the damage to the properties caused by the hailstorm (Count II). *Id*. ¶¶ 25–27. Employers Mutual also contends that the policy contains an exception for damage caused by:

> "[W]ear and tear, rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself; continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more; and neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss."

*Id*. ¶¶ 28–30. And because of this exception, Employers Mutual asserts that SG&D's claim for the damage to the properties is excluded from coverage under the policy (Count III). *Id*. Employers Mutual also contends that "to the extent that any of the Properties are covered by other insurance, and SG&D is determined to have an enforceable claim," the policy is required to pay only the excess of the amount that the other insurance claims will cover (Count IV). *Id*. ¶¶ 31–33. Finally, Employers Mutual reserves the right to deny any claims for any other reason or to assert any other conditions of the policy as a defense (Count V). *Id*. ¶¶ 34–35. Employers Mutual seeks an entry of declaratory judgment determining its duties to extend coverage to SG&D for any damages that are sought or that may be sought under the policy and for an award of costs. *Id*. at 8.

    B.    <u>SG&D's Counterclaims</u>

In response, SG&D filed an answer and counterclaims against Employers Mutual. Answer & Countercl. 1, ECF No. 5. Regarding its counterclaims, SG&D asserts that Employers Mutual breached the policy by failing to fully and promptly pay the amounts owed to it as a result of the loss, as required by the policy (Count I). *Id*. ¶¶ 22–26. SG&D also maintains that Employers Mutual's "refusal to pay the amounts contractually owed to [it] is arbitrary and capricious and constitutes bad faith" (Count II). *Id*. ¶¶ 27–31. Additionally, SG&D alleges that Employers Mutual violated the Unfair Claims Settlement Act, KRS § 304.12-230 (Count III), *id*. ¶¶ 32–33, and violated KRS § 304.12-235 by failing to make a good faith attempt to settle its claims (Count IV), *id*. ¶¶ 34–36. SG&D further maintains that Employers Mutual violated the

Kentucky Consumer Protection Act, KRS § 367.110, *et seq*. by engaging in "unfair, false, misleading and/or deceptive practices" regarding its claim (Count V). *Id*. ¶¶ 37–43. SG&D seeks an injunction requiring Employers Mutual to pay its claim under the policy, compensatory damages, punitive damages, and attorney fees and costs. *Id*. at 13–14.

III.  Discussion

Employers Mutual now moves to bifurcate the bad faith claim from the declaratory judgment claim and contract counterclaims under Federal Rule of Civil Procedure 42 and to hold discovery of bad faith issues in abeyance pending the resolution of the other claims. Mot. Bifurcate 1, ECF No. 10.

    A.  Employers Mutual's Motion to Bifurcate the Bad Faith Claim

Employers Mutual argues that the Court should bifurcate the bad faith claim from the declaratory judgment claim and contract counterclaims to preclude jury confusion and prejudice. Mem. Supp. Mot. Bifurcate 4–6, ECF No. 10-1. SG&D maintains in opposition that bifurcation should be denied because the bad faith claim and other claims are "inextricably intertwined" such that bifurcation is not appropriate under Rule 42. Resp. Opp. Mot. Bifurcate 3–6, ECF No. 12.

Rule 42 provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The party seeking bifurcation bears the burden of showing the issues should be separated. *Weathers v. Healthcare Servs. Grp.*, No. 3:13-CV-01196-TBR-LLK, 2014 U.S. Dist. LEXIS 93069, at *2 (W.D. Ky. July 9, 2014).

Whether to try issues or claims separately is ultimately discretionary with the court. *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005). The court's decision is made on a case-by-

case basis. *See In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988). The court should consider several facts, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (internal citations omitted).

Claims for coverage under an insurance agreement and claims of bad faith on behalf of the insurer are often bifurcated because "if the plaintiff cannot prevail on the coverage issue, the claim for bad faith necessarily fails." *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11-CV-00054-R, 2011 U.S. Dist. LEXIS 138111, at *4 (W.D. Ky. Dec. 1, 2011); *see also Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005) ("Because the merits of the bad faith claim depended on whether the limitations provision was valid, it was reasonable for the court to resolve the validity question before allowing the bad faith claim to proceed.").

Here, SG&D must be entitled to recovery under the policy to prevail on its claim of bad faith. Thus, bifurcation of the bad faith claim from the declaratory judgment claim and contract counterclaims will avoid the expense and time of litigating issues that may never arise. Bifurcation will also assist the jury in focusing on a single issue at a time. Moreover, bifurcation will not prejudice the parties because SG&D will have an opportunity to pursue its bad faith claim if it is legally entitled to do so and because Employers Mutual will be able to avoid any unnecessary and premature litigation on the issue of bad faith. Accordingly, the Court will grant Employers Mutual's motion to bifurcate the bad faith claim from the declaratory judgment claim and contract counterclaims.

  B. <u>Employers Mutual's Motion to Hold Discovery of Bad Faith Issues in Abeyance</u>

Employers Mutual additionally requests that the Court hold discovery of bad faith issues in abeyance pending the resolution of the declaratory judgment claim and contract

counterclaims. Mem. Supp. Mot. Bifurcate 6–8, ECF No. 10-1. Employers Mutual argues that holding discovery will promote judicial economy and will prevent the disclosure of information protected by the attorney-client privilege. *Id.* SG&D contends, however, that allowing discovery on the bad faith issue to proceed would better promote judicial economy and that the Federal Rules of Civil Procedure provide a solution for the inadvertent disclosure of privileged information. Resp. Opp. Mot. Bifurcate 5–6, ECF No. 12.

Given that SG&D may not proceed on its bad faith claim until it can establish a breach of contract claim, judicial economy and the parties' interests are best served by holding discovery on bad faith issues in abeyance. *See Brantley*, 2011 U.S. Dist. LEXIS at *7–8 ("Defendants may be prejudiced if [joint discovery] occurs before it is clear whether the plaintiff can even proceed with a bad faith claim by establishing a breach of contract.") (citing *Wolf v. Geico Ins. Co.*, 682 F. Supp. 2d 197, 199 (D.R.I. 2010)). And while Rule 26(b)(5)(B) provides a solution for the inadvertent disclosure of privileged information, the Court prefers to avoid needless discovery disputes. Thus, the Court will grant Employers Mutual's motion to hold discovery of bad faith issues in abeyance pending the resolution of the declaratory judgment claim and contract counterclaims.

IV. Conclusion

The Court will grant Employers Mutual's motion to bifurcate trial and to hold the discovery of bad faith issues in abeyance. The Court will bifurcate trial on the bad faith claim from the declaratory judgment claim and contract counterclaims. The Court will hold the discovery of the bad faith issues in abeyance pending the resolution of the underlying declaratory judgment claim and contract counterclaims. An order will be entered in accordance with this memorandum opinion.

July 18, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**